IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**G. WINSTON GRAGG,**

    Appellant,

Vs.                                    Shelby Law No. 02A01-9804-CV-00108

**NELLIE CASBURN GRAGG,**

    Appellee.

_____

FILED

October 22, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE K. S. ROBILIO, JUDGE

Hal Gerber, Gerber Law Office of Memphis
For Appellant

Thomas R. Prewitt, Sr., Armstrong Allen Prewitt
Gentry Johnston & Holmes, PLLC of memphis
For Appellee

*REVERSED IN PART, AFFIRMED IN PART AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

Appellant, G. Winston Gragg (Husband), appeals the trial court's decree granting divorce to Appellee, Nellie Casburn Gragg (Wife). The sole issue for review is whether benefits received by Husband from two disability insurance policies are marital property subject to

distribution.

The pertinent facts are undisputed. The parties were married September 4, 1971, separated December 10, 1993, and Husband filed the present suit for divorce September 12, 1994. Husband is a medical doctor, specializing in anesthesiology. During the course of the marriage, Husband purchased two policies of disability insurance. A policy with Provident Life & Accident Insurance Company was issued May 13, 1978, and provides for total disability benefits of $2,000.00 per month. The other policy with Continental Insurance Company, issued June 27, 1988, provides for disability benefits of $5,000.00 per month with an increase of five percent per year to take care of cost of living increases. The premiums for the policies were paid with marital funds earned by Husband from each policy's inception until his total disability commenced in late October, 1994, and totaled approximately $45,000.00. Each policy provides for waiver of premiums during total disability, and no premiums have been paid since Husband's disability commenced. It is doubtful that Husband will ever be able to return to his employment as an anesthesiologist.

At the time of trial it was stipulated that Husband would receive $7,750.00 per month from the two policies, and this amount would increase to $8,000.00 per month beginning in October of 1998. The parties also stipulated that all marital property should be divided equally between the parties. The trial court found that all the benefits paid by the two insurance policies to Husband, both before and after the divorce, constitute marital property subject to division. The court ordered that beginning with the payments due in March, 1998, Wife is entitled to fifty percent of the monthly payments. The decree was later amended to provide that in the event the trial court's holding concerning the disability income policies is reversed on appeal, Wife is awarded $2,500.00 per month as alimony.

The sole issue for review is whether the trial court erred in holding that the benefits of the disability income insurance policies are marital property subject to distribution.

The parties have not cited, nor has our research revealed, any Tennessee case directly on point. Other jurisdictions have dealt with the question with differing results. We will briefly examine some of these cases.

In *Gnerlich v. Gnerlich*, 538 N.E.2d 285 (Ind. App. 1989), the issue was whether benefits of disability insurance are marital property subject to division under the Indiana Code.

The disability insurance was purchased by monthly contribution for a disability retirement plan offered by the husband's employer. The court held that, under the statutory definition of property, the term property means all of the assets, including the right to receive pension or retirement benefits. Thus, disability benefits are marital property subject to division. The court agreed with the holding of an Illinois court "that a disability is so substantially similar in nature to an ordinary retirement pension to be appropriately characterized as marital property subject to division." *Id.* at 288.

In *In Re Marriage of Simon*, 856 P.2d 47 (Col. App. 1993) the court held that the husband's proceeds from a private disability insurance policy acquired with marital funds during the marriage was not excluded from the statutory definition of marital property and is subject to division.

In *In Re Marriage of Michael A. Brewer*, 949 P.2d 404 (Wash. App. 1998)., the wife appealed the dissolution decree which held that post-dissolution disability payments received by the husband was his separate property. The husband started receiving disability payments from a private insurance policy during the marriage. Washington is a community property state, and the premiums for the insurance policies were paid with community property. The court relied upon the holdings of two previous cases that held that if the premiums are paid with community funds, the insurance proceeds are community property. The court followed this precedent, although noting that the cases made no distinction between a disability policy and a life insurance policy, and that there should be a reexamination of these holdings. The basis of the court's ruling is that the premiums were paid with community property; therefore, the insurance proceeds are community property.

In *Sherman v. Sherman*, 740 S.W.2d 203 (Mo. App. 1987), the issue was whether the trial court erred in awarding the wife a division of marital property which included a percentage of the husband's disability benefits received under a private insurance policy. The court held that the benefits did not constitute marital property subject to division primarily on the basis that: (1) the disability payments are not a partial consideration for past employment as in the case of pension benefits and, (2) the benefits are a substitute for the husband's lost earnings occasioned by his inability to work and are the same as post-dissolution earnings which are denominated non-marital property under the Missouri Code.

In *Hoag v. Hoag*, 857 P.2d 208 (Or. App. 1993), the court, in holding that the husband's disability insurance benefits were not marital assets subject to division, noted that "under certain circumstances, disability payments may be treated as a marital asset. If, for example, the payments are intended to provide something more than wage replacement for one of the parties, it may be appropriate to treat them as a marital asset." *Id.* at 211. The court found nothing in the record to indicate that the disability insurance benefits were for any purpose other than to provide replacement of lost income.

Analogous to the precise issue concerning disability income insurance policies are those situations involving employee disability pensions. Here again, other jurisdictions dealing with the question have reached differing results.

In *Allard v. Allard*, 708 A.2d 554 (R.I. 1998), the court held that a disability pension is subject to equitable distribution on the dissolution of the marriage to the extent that it represents the employed spouse's vested retirement pay earned during marriage. To the extent that the disability pension compensates the recipient for lost earning capacity and suffering caused by disability, it is the sole and separate property of the employee and not subject to equitable distribution.

In *Ciliberti v. Ciliberti*, 542 A.2d 580 (Pa. Super Ct. 1988), the issue was whether a police disability pension is marital property subject to equitable distribution. The court held that disability payments intended to compensate the employee for lost earning capacity are not marital property subject to distribution, except for any portion of the disability benefits which represents an amount received in lieu of retirement benefits. The court said:

> We decline to hold that true disability payments are marital property subject to equitable distribution. Such benefits are intended to compensate the employee spouse for lost earning capacity. They are paid in lieu of the earnings which would have been paid to the employee if he or she had been able to work. They replace the future salary or wages which the employee, because of physical or mental disability, will not be able to earn. They are comparable to Workmen's Compensation disability payments. Post-divorce payments intended to compensate for an inability to work are not marital property.

*Id.* at 582.

In *Hoffner v. Hoffner*, 577 So.2d 703 (Fla. Dist. App. 1991), the issue before the court was whether and to what extent, if any, the husband's disability pension was a marital asset. The

4

court said, "[W]e are of the view that a disability pension upon which a spouse is presently receiving benefits, by its very nature replaces future lost income, and thus is not a marital asset subject to equitable distribution." *Id.* at 704.

In *Mylette v. Mylette*, 531 N.Y.2d 489 (N.Y. Sup. Ct. 1988), the court noted that a disability pension differs from a retirement pension to the extent that it constitutes compensation for personal injury and represents compensation for lost earnings as well as for pain and suffering. The court held that the husband's disability pension was not marital property subject to distribution except "where a disability pension may, in part, represent deferred compensation, it is indistinguishable from a retirement pension and is, to that extent, subject to equitable distribution." *Id.* at 491.

In *Freeman v. Freeman*, 468 So.2d 326 (Fla. Dist. App. 1985), the court held that the disability pension was designed to compensate the husband for lost earnings and injury and was the property of the husband, distinguishable from a retirement pension. Therefore, it is not a marital asset for the purposes of equitable distribution.

In *Kruger v. Kruger,* 375 A.2d 659 (N.J. 1977), the court held that the husband's military retirement disability benefits were property subject to equitable distribution.

The above cases illustrate the wide divergence of opinion in dealing with the issue before us. We have not exhaustively reviewed all of the cases involving this point, as it would serve no useful purpose to prolong the opinion in that manner.

To reach our decision, we first look to the Tennessee statute defining marital property. T.C.A. § 36-4-121 (b) (1)(A)(B):

> (1)(A) "Marital Property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.
>
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) of each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

5

Under the definition set out above, pension rights, whether vested or unvested, have been determined to be marital property subject to distribution. *Cohen v. Cohen*, 937 S.W.2d 823 (Tenn. 1996); *Kendrick v. Kendrick*, 902 S.W.2d 918 (Tenn. App. 1994). Future income does not fall within the definition of marital property. *Ford v. Ford*, No. 03A01-9606-CH-00197, 1996 WL 555230 (Tenn. App. E.S. Oct. 1, 1996).

Wife asserts that because the disability policies were issued to Husband during the marriage and the premiums were paid with marital funds, coupled with the fact that Husband's disability and receipt of benefits commenced during the marriage, all benefits received by Husband after the entry of the divorce decree constitute marital property.

We believe, however, that the proper approach would be to first determine the purpose and essence of a disability income policy. Disability insurance protects against the "inability of an individual to earn the salary or wages to which he or she was accustomed in the immediate past." Lee R. Russ & Thomas F. Segalla, 1 Couch on Ins. § 1:65 (3d ed. 1996). Disability insurance is a form of casualty insurance. T.C.A. § 56-2-201 (2) (1980 & Supp. 1998). Disability income insurance has no value until the happening of the "casualty" which causes the benefits to be applicable. The protection sought and afforded by such a policy is the assurance of a stream of income which has been halted because of the happening of the event. Thus, it would seem logical that the benefits are a substitute and stand in the place of what would have been except for the "casualty." We can analogize this to a fire insurance policy or any other property-type insurance policy one might have to protect against losses of property. If we assume that the parties' dwelling house is marital property as it mostly commonly is and assume that the dwelling house was destroyed prior to the dissolution of the marriage, it would not be questioned that the proceeds from this policy would stand in the place of the marital property and could be appropriately divided the same as if the house was still in existence. This property policy has no value until the "casualty" occurs, and it is perfectly logical that the proceeds stand in place of the insured property. By the same token, a disability income policy has no value until such time as the casualty occurs, and the insurance is to protect against the inability of the insured to earn the income he would earn without a disability. Thus, it appears logical that the disability income benefits should stand in the place of earnings the insured would have had except for his disability. Pension rights are likewise distinguishable because such benefits can

6

be defined as a form of deferred compensation in consideration of past employment. Moreover, pension rights accrue value as the rights mature, while a disability income policy has no value.

The fact that the policy premiums were paid with marital funds is not controlling. Husband was the primary provider for the family, and premiums were paid to create a substitute for his income during the marriage since apparently divorce was not contemplated at the time the policies were purchased. Wife was a prospective beneficiary of this income and ultimately derived benefit from this source of income during the marriage. The insurance benefits, as a substitute for earned income, are available for payment of alimony *in futuro.* The payment of the premium with marital funds was for the benefit of both parties to the marriage and cannot be a controlling factor in determining whether the benefits are marital property.

We must also bear in mind that benefits are disability benefits and payable only during the time that Husband is disabled. During the time he is disabled, the premiums on the policy are waived. Should his disability cease, he will again become obligated to pay the premiums on the policies and conceivably start earning his income as a physician. Should his disability recur down the road, would Wife then be entitled to a distribution of marital property conceivably some years after the final decree of divorce has been entered? We believe not. The distribution of marital property should be accomplished with finality at the time of the final decree. The very nature of the disability payments in the instant case prevents such a finality from existing. For all of these reasons, we feel that the disability income payments in the instant case are not marital property subject to distribution. The benefits constitute substituted income to Husband and are available for such obligations as might be imposed by the court.[1]

Accordingly, that part of the trial court's decree awarding Wife a part of the disability income benefits as a marital distribution is reversed. The decree in all other respects is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed one-half to each party.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

_____

[1] In ***Turner v. Turner***, No. 01A01-9506-CV-00255, 22 TAM 18-16 (Tenn. App. 1997), disability income benefits were treated as gross income for the purpose of the child support guidelines.

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**